## GREAT ATLANTIC & PACIFIC TEA CO. v. GILLESPY et al.

(Circuit Court of Appeals, Fifth Circuit. January 26, 1922.)

No. 3707.

1. **Landlord and tenant ⬅=180(4)—Lessor, repairing after partial destruction, liable for difference between rent and rental value for denying lessee possession.**

Conceding that, on partial destruction of a leased building, rendering it unsuitable for the lessee's business, the lessor was under no obligation to repair, and, on the lessee's election not to surrender the lease, might have required payment of rent without restoring the building or pending repairs, where it undertook to, and did, repair the building, but excluded the lessee from possession, it was liable for the difference between the rental value from the date of the completion of the repairs and the rent from the date of the fire as damages for its breach of contract.

2. **Landlord and tenant ⬅=152(5)—Lessee held not under obligation to repair after partial destruction by fire.**

Under a lease requiring the lessee to surrender possession at the end of the term in like good order as at the commencement of the lease, natural wear and tear excepted, and to make repairs required by the sanitary and other laws of the city, natural wear and tear excepted, but providing that these stipulations should not apply in case of damage or destruction by fire, etc., the lessee was under no obligation to repair in case of partial destruction by fire.

3. **Landlord and tenant ⬅=211(1)—Lessee held not to have conditioned election to continue lease, following partial destruction, on abatement of rent during repairs.**

Under a lease providing for repairs by the lessor, and for an abatement of rent in case of slight damage by fire or otherwise, termination of the lease in case of total destruction, and an option to the lessee to annul the lease or allow it to remain in full force and effect in case of partial destruction rendering the premises unsuitable, where there was such a partial destruction, and the lessee unequivocally elected to continue the lease, a letter subsequently written, repeating such election and requesting prompt repairs, and abatement of rent during their progress, did not make the abatement of rent a condition of its election to continue the lease.

Walker, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

---

Action by the Great Atlantic & Pacific Tea Company against Mortie J. Gillespy, as executor, etc., and others. Judgment for plaintiff for an insufficient amount, and it brings error. Reversed and remanded, with directions.

J. L. Drennen, of Birmingham, Ala., for plaintiff in error.
Edward H. Cabaniss, of Birmingham, Ala., for defendants in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The plaintiff in error, which was the lessee of a two-story brick store in Birmingham, Ala., brought an action in the United States District Court for the Northern District of Alabama to recover damages for an alleged wrongful eviction by defendants in error, the lessors, about 19 months before the expiration of the term for which the premises had been rented by a written lease. The paragraphs of the lease bearing on the questions raised in this case are the following:

Paragraph 3, last clause: "This lease being terminated, to surrender quiet and peaceable possession of said premises in like good order as at the commencement of said term, natural wear and tear excepted."

Paragraph 4: "It is further agreed and understood that the lessor shall not be required to do any repairs upon the building herein leased, unless so stipulated and agreed upon in writing at the commencement of this lease, nor is the lessor liable for any breakage or getting out of order of any of the water pipes, or water closets or any other plumbing, but on the contrary lessee shall keep the same in such repair as required by the sanitary and other laws of the city of Birmingham, natural wear and tear excepted."

Paragraph 6: "It is further understood and agreed that the lessor reserves the right to make any repairs that may be deemed necessary during the term of this lease."

Paragraph 9: "If the premises be slightly damaged by fire, or otherwise, they shall be promptly repaired by the lessor, and an abatement shall be made from the rent corresponding with the time during which and the extent to which the premises may not be used by the lessee after damage occurring as aforesaid and before repair. In the event of the total destruction of the premises by fire or otherwise this lease shall cease and come to an end, and the lessee shall be liable for rent only up to the time of such destruction. In the event of a partial destruction of the premises such as to render them unsuitable for the business of the lessee, then, at its option, this lease shall cease and come to an end, and the lessee shall be liable for the rent only up to the time of such election to terminate this lease. The lessee shall elect within ten days whether or not it will annul this lease or allow it to remain in full force and effect."

Paragraph 10: "Neither the last stipulation of the third paragraph nor the last stipulation of the fourth paragraph of the within lease shall be construed to have any force or effect whatever in the event of damage to the leased premises or destruction of the same resulting from natural wear and tear, fire, from the elements or from any other cause not within the control of the lessee."

On February 26, 1920, a fire occurred in a building adjoining the rented premises, which caused part of the brick wall of such adjoining building to fall upon the rented storehouse, partially destroying the same, so as to render it unsuitable for the business of the lessee. The lessors at once entered upon and began restoration of the premises. Shortly after this occurred there were conversations between representatives of the lessee and the lessors in regard to the situation, but it was agreed and understood that what was then said should be "without prej-

udice." On March 2, 1920, the lessee sent to the lessors a letter, of which the following is a copy, omitting address and signature:

"Pursuant to the terms and conditions of the lease we have with you, dated July 26, 1919, of the premises occupied by us at No. 2019 Second avenue, Birmingham, Ala., in paragraph 9 of its text, we hereby notify you that it is not our intention to terminate the lease, and that we desire it to remain in full force and effect until the date of expiration of the same."

On March 6, 1920, the lessee addressed and sent to the lessors a letter, of the body of which the following is a copy:

"Pursuant to the terms and conditions of the lease we have with you, dated July 25, 1919, of the premises occupied by us at No. 2019 Second avenue, Birmingham, Ala., in paragraph 9 of its text, we hereby elect not to annul lease, but to allow it to remain in full force and effect, and request prompt repairs of the leased premises, and abatement rent during progress of repairs."

On March 8, 1920, the lessors sent to the lessee a letter, of the body of which the following is a copy:

"We are in receipt of your letter of March 2 and your letter of March 6, 1920, and in reply to same beg to say: The building recently occupied by you, No. 2019 Second avenue, Birmingham, Alabama, is totally destroyed within the meaning of the lease. The building will be replaced in sixty or ninety days, and if you wish to lease same when finished, please act promptly, as we are disposed to give you preference in the matter."

Replying to this letter, the lessee wired the lessors as follows:

"Your letter of March 8 constituted a repudiation of your lease contract; have arranged to lease other premises."

And on March 22, 1920, the lessee sent to the lessors a letter, which, after acknowledging receipt of the letter of the lessors of March 8, and quoting therefrom, proceeded and concluded as follows:

"We hereby deny absolutely that the building at No. 2019 Second avenue, your city, has been totally destroyed, either within the meaning of our lease of these premises, or otherwise, and we have in our possession photographs which show plainly that that is not the case. Moreover, as your letter indicates very plainly that you do not intend to perform the obligations imposed upon you by the terms of the agreement of July 25 last between you and ourselves, whereby you leased the building mentiond to us for a term of two years from the 1st of October, to repair promptly the damage to the structure, and to keep us in possession of the same during the remainder of the term of our lease, upon the basis of us receiving an abatement in our rent during whatever period may elapse from the time when the building was damaged until it is again ready for occupancy, we hereby inform you that we regard your letter as a total repudiation on your part of your obligations under the lease contract referred to. Under these circumstances we propose to take such action in the premises as our interests appear to require, and we hereby notify you that we shall hold you liable for whatever loss or damage we may sustain in consequence of the above-mentioned breach of your contract with us."

The rent payable by the terms of the lease was $350 a month. The market rental value of the rented premises, at the time they were damaged and as they were before the fire, was $600 a month. The lessors had the store repaired at a cost of about $6,200. Soon after March 8, 1920, the lessee rented another store in Birmingham, less available, and

continued its business therein. The restoration of the building was completed during May, 1920. This suit was filed May 28, 1920.

The court held that the contract was breached, but that plaintiff was entitled to recover only nominal damages, because the defendant was under no obligation to repair; that plaintiff was bound for its rental, and that the premises were only rendered valuable by the expenditure of $6,200; that therefore, as the damages to plaintiff, i. e., the difference between $350 per month rental and $600, the value of the restored premises, i. e., $250 per month for the unexpired time, was less than $6,200, the plaintiff had sustained no actual damage, and directed a verdict of one cent in plaintiff's favor.

[1] Defendants concede that, if the contract was broken and plaintiff wrongfully evicted from its term, it could have sued for the restoration of possession and recovered possession of the premises without liability to pay for the improvements thereon, but claim that, having sued for damages for the breach of its contract, it can only recover for the damage sustained by the deprivation of the possession of the premises in their condition after the fire and before the restoration of the building thereon by the plaintiff.

It seems to us that this view is not sound. If it be conceded that defendants were under no obligation to repair, nevertheless they undertook to repair. The question is: Having so repaired, on premises to the possession of which the plaintiff had the right, can they deny to plaintiff such possession from the time of the fire until the end of the term, without paying to the plaintiff that of which they have deprived it; i. e., the use of the premises in the reconstructed building from the date of its completion, subject to the rent for the entire term remaining after the fire?

[2] It is clear that no obligation to repair in the event of fire rested on the lessee. The lease so expressly provided. Even if the lessors were not so obligated, they had reserved the right to enter and make any repairs they deemed necessary during the term of the lease. If it be conceded that, under plaintiff's election, defendants could have required it to pay the rent without restoring the building, or pending repair, it is reasonable to assume that the defendants have been benefited by a prompt restoration of the building and by having it a repaired structure during the current lease for future rentings, rather than by letting it remain to be repaired after the termination of the existing lease. They would in either event have expended the same sum in repairs and have received the same sum from plaintiff as rental during the existing term.

[3] The request of the lessee for an abatement of rent pending repairs was not made a condition to its election to continue the lease. It had so elected unequivocally on March 2d. That it requested prompt repair and abatement of rent in its letter of March 6th was but a statement of what it construed to be the intention of the parties under the lease. The lessors did not question this position in their reply, but contended that the lease was at an end by reason of the alleged total destruction of the building.

It was conceded by the defendants in judicio that the destruction of the demised building was partial within the meaning of the lease, and

the court held that the defendant had breached the contract. The evidence clearly showed that during the larger part of the remainder of the term the premises were valuable for occupancy, there being evidence that they were worth $600 per month; the defendants having elected to enter and repair at once, the direction of the verdict for nominal damages for the plaintiff was error.

The judgment of the District Court is reversed, and the case is remanded, with directions to award a new trial.

WALKER, Circuit Judge (dissenting). In the contingency which arose it was incumbent on the lessee to "elect within ten days whether or not it will annul this lease or allow it to remain in full force and effect." In my opinion the evidence did not show that the lessee elected to allow the lease to remain in full force and effect. If the lessee's letter of March 2d had remained the sole evidence of its choice and action, an election by it to allow the lease to remain in full force and effect would have been shown; but that letter was not the sole evidence of the position taken by the lessee. Before that letter was replied to, the lessee wrote and sent its letter of March 6th, in which its statement of its election not to annul the lease was coupled with the following:

"And request prompt repairs of the leased premises and abatement rent during progress of repairs."

It is not to be supposed that the letter of March 6th would have been written, if the lessee had not intended to modify or qualify the election expressed in its letter of March 2d. That the lessee intended the last-quoted language to be a statement of a condition upon which it made its election not to annul the lease is shown by the following part of its letter of March 22d:

"Moreover, as your letter indicates very plainly that you do not intend to perform the obligations imposed upon you by the terms of the agreement of July 25 last between you and ourselves, whereby you leased the building mentioned to us for a term of two years from the 1st of October. to repair promptly the damage to the structure and to keep us in possession of the same during the remainder of the term of our lease, upon the basis of us receiving an abatement in our rent during whatever period may elapse from the time when the building was damaged until it is again ready for occupancy, we hereby inform you that we regard your letter as a total repudiation on your part of your obligations under the lease contract referred to."

The lease did not give the lessee the right to make its election not to terminate the lease, subject to the condition or qualification that the lessors make the repairs required to restore the partially destroyed building to its former condition and allow an abatement of the rent. The qualified and conditional election made by the lessee was not an election to allow the lease to remain in full force and effect. The lease prescribed the affirmative and unconditional action to be taken by the lessee to keep the lease in full force and effect, in the event of a partial destruction of the leased premises rendering them unsuitable for the lessee's business. I do not think that the evidence showed that the lessee did what, in the contingency that arose, was required to keep the.

lease alive. As a termination of the lease left the lessee without right to continue to possess or use the rented premises, it was not entitled to recover damages for the alleged eviction complained of.

It follows that the plaintiff in error, the lessee, is not entitled to a reversal because of the ruling which was excepted to.